1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DEBRA LYNN RANDELL,
     dba CUSTOM PERSONNEL,
11
                Plaintiff,              No. CIV S-07-2760 JAM GGH PS
12        vs.

13   CALIFORNIA STATE COMPENSATION       FINDINGS AND RECOMMENDATIONS
     INSURANCE FUND, JAMES C. TUDOR,
14   President,

15              Defendant.
     _____/
16

17              Pursuant to motions filed April 30, 2008 and May 9, 2008, defendant State

18   Compensation Insurance Fund moves, respectively, to set aside the default entered by the Clerk

19   of Court on April 15, 2008, and to dismiss plaintiff's complaint.  These matters, previously

20   scheduled for hearing on June 12, 2008, were submitted for decision on the papers by order filed

21   June 9, 2008.  Also pending is plaintiff's request made April 23, 2008, that the Clerk enter

22   default judgment.

23              For the reasons set forth below, the court recommends that defendant's motion to

24   set aside default be granted and plaintiff's motion for default judgment be denied, and that

25   defendant's motion to dismiss the complaint be granted without leave to amend pursuant to Fed.

26   R. Civ. P. 12(b)(1).

1  BACKGROUND

2         Plaintiff owns Custom Personnel, "an employee leasing company, providing

3  employees to a large number of diversified customers."  CDI Decision,[1] at p. 1; Complaint, at p.

4  2.  Defendant California State Compensation Insurance Fund ("SCIF" or "Fund") is a "public

5  fund enterprise" within the California Department of Industrial Relations, created for the purpose

6  of ensuring that all California businesses may obtain mandatory workers' compensation

7  insurance coverage.  See Cal. Const. Art XIV, § 4 (authorizing California Legislature "to create,

8  and enforce a complete system of workers' compensation"); see also, Cal. Labor Code § 56

9  (SCIF created as a division of the Department of Industrial Relations); Cal. Ins. Code § 11773

10 ("[t]he fund shall be organized as a public enterprise fund").  Additionally named defendant

11 "James C. Tudor, President," "was no longer employed by the State Fund at the time the suit was

12 filed."  Motion to Set Aside Default, at p. 2.

13        In her complaint filed December 21, 2007, plaintiff alleges she was denied

14 "substantive due process" by SCIF's presentation of a final bill for payment of workers

15 compensation insurance premiums for the calendar year 2005, which included notice that failure

16 to make payment in full by December 31, 2007 would result in cancellation of coverage for

17 plaintiff's employees "with the resultant closure of business."  Complaint, at p. 3.  Plaintiff also

18 alleges that this "enforcement of a fictitious debt" imposes upon her "involuntary servitude in

19 violation of the Thirteen Amendment to the Federal Constitution."  Id. at p. 2.  Plaintiff seeks

20 damages in the "sum certain" amount of $46 million "[f]or the legal coercion and the attendant

21 mental anguish, emotional stress and financial loss, of threatening to cancel 'insurance coverage'

22 for the nonpayment of a fictitious debt. . ."  Complaint, at pp. 3-4.

23 \\\\\

24 _____

25        [1]  The "CDI Decision" refers to the September 5, 2007 decision in this matter by the
   California Department of Insurance, Administrative Hearing Bureau, included as an attachment
26 to both of defendant's motions.  See Exh. B to Defendant's Motion to Set Aside Default (at B-5
   to B-11), and Exh. B to Defendant's Motion to Dismiss (at B-5 to B-11).

1   Contemporaneous with filing her complaint, plaintiff filed an application for

2   temporary restraining order which was denied by the district judge by order filed January 3, 2008.

3   On February 13, 2008, plaintiff filed a return averring that service of process had

4   been made upon defendant on December 22, 2007 "by U.S. Mail (priority mail) to address on

5   front of summons," specifically, "James C. Tudor acting President (or his successor)," at SCIF's

6   San Francisco location.  On February 26, 2008, plaintiff requested entry of default by the Clerk

7   of Court on the ground that defendant had been properly served yet failed to answer within the 20

8   days prescribed by Fed. R. Civ. P. 12(a).  The Clerk entered defendant's default on April 15,

9   2008.

10   On April 23, 2008, plaintiff requested that the Clerk enter default judgment

11   against defendant based on the alleged certainty of plaintiff's damages.  See Fed. R. Civ. P.

12   55(b)(1) (upon request, default judgment must be entered by the Clerk against a nonappearing

13   defendant "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by

14   computation").

15   On April 30, 2008, defendant SCIF moved to set aside the entry of default based

16   on improper service of process, and to dismiss the complaint.  The motions, erroneously noticed

17   before the district judge, were properly renoticed before the undersigned and thereafter submitted

18   for decision on the papers.

19   DISCUSSION

20   A.  Motion to Set Aside Default

21   "When a party against whom a judgment for affirmative relief is sought has failed

22   to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must

23   enter the party's default."  Fed. R. Civ. P. 55(a).

24   " 'Absent an abuse of discretion, there is no error in setting aside a default where

25   the judge finds good cause to do so.' Curry v. Jensen, 523 F.2d 387, 388 (9th Cir.1975).  The

26   court's discretion is especially broad where, as here, it is entry of default that is being set aside,

1   rather than a default judgment.  See Meehan v. Snow, 652 F.2d 274, 276 (2d Cir.1981).  A

2   decision on a motion to set aside a default is not an abuse of discretion unless the court is "clearly

3   wrong" in its determination of good cause.  Provident Security Life Insurance Co. v. Gorsuch,

4   323 F.2d 839, 842 (9th Cir.1963).  ' " 'Where timely relief is sought from a default . . . and the

5   movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set

6   aside the [default] so that cases may be decided on their merits.' " Schwab v. Bullock's Inc., 508

7   F.2d 353, 355 (9th Cir.1974) (quoting 7 J. Moore, Moore's Federal Practice ¶ 60.19, at 232-33)."

8   Mendoza v. Wight Vineyard Management, 783 F.2d 941, 945-946 (9th Cir. 1986).

9                Defendant has demonstrated good cause for setting aside the Clerk's entry of

10   default.  Service of the summons and complaint by mail was inadequate.[2]  The Federal Rules of

11   Civil Procedure provide that a "state-created governmental organization that is subject to suit

12   must be served by:  (A) delivering a copy of the summons and of the complaint to its chief

13   executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for

14   serving a summons or like process on such a defendant."  Fed. R. Civ. P. 4(j)(2).  In California,

15   service of process upon a public entity shall be made "by delivering[3] a copy of the summons and

16   of the complaint to the clerk, secretary, president, presiding officer, or other head of its governing

17   body."  Cal. Code of Civil Procedure § 415.60(a).  Thus, pursuant to either the Federal Rules or

18   California procedure, plaintiff was required to serve process by personal – not postal – delivery

19   \\\\\

20   \\\\\

---

22     [2]  Defendant also asserts service of process was inadequate because plaintiff failed to include a Notice and Acknowledgment of Receipt form.  Motion to Dismiss, at p. 4.  However, the cited authority – Fed. R. Civ. P. 4(c)(2)(C)(ii) – no longer exists and neither does the requirement.  See, e.g., "The New (Dec. 1, 1993) Rule 4 of the Federal Rules of Civil Procedure: Changes in Summons Service and Personal Jurisdiction," 151 F.R.D. 441(1994).

25     [3]  "Delivery" is construed as personal service.  See, e.g., Benson v. Superior Court, 214 Cal. App. 2d 551, 559 (1963); Hunstock v. Estate Development Corp., 22 Cal. 2d 205, 210, (1943); see also, Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 700, 108 S.Ct. 2104 (1988) ("[s]ervice of process refers to a formal delivery of documents").

1  upon SCIF's current  – not former – chief executive officer.[4]

2         Notwithstanding plaintiff's errors in serving the summons and complaint,

3  defendant received actual notice of this action and has now appeared.

4         Accordingly, good cause having been shown, defendant's motion to set aside the

5  Clerk's entry default will be granted.

6     B.  Motion for Default Judgment

7         For the reasons supporting good cause to set aside the Clerk's entry of default,

8  plaintiff's motion for default judgment pursuant to Fed. R. Civ. P. 55(b)[5] is rendered moot and

9  should, therefore, be denied.

10    C.  Motion to Dismiss

11        Defendant moves to dismiss the complaint in its entirety on the following

12  grounds:  (1) lack of subject matter jurisdiction based on Eleventh Amendment immunity; (2)

13  principles of abstention set forth in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746 (1971); and (3)

14  failure to state a claim under the Thirteenth Amendment.  Due to the court's conclusion that

15  plaintiff's complaint fails to establish federal subject matter jurisdiction, defendant's first and

16  third contentions are addressed only parenthetically, and its second contention need not be

17  reached.

18  \\\\\

19  \\\\\

20  ─────────────────

21        [4]  As noted herein, SCIF is unique in its status as a public enterprise with a proprietary
    purpose.  Assuming, alternatively, application of the service of process requirements for private
22  corporations set forth at Fed. R. Civ. P. 4(h), service of process would still need to be made
    personally upon a designated SCIF officer or agent.

23        [5]  While plaintiff sought default judgment pursuant to Fed. R. Civ. P. 55(b)(1)
    (authorizing the Clerk of Court to enter judgment against a properly served but nonappearing
24  defendant, provided "plaintiff's claim is for a sum certain or a sum that can be made certain by
    computation"), plaintiff's claim for $46 million, based largely on alleged consequential damages
25  (including "mental anguish" and "emotional stress"), may not be made certain by computation.
    Accordingly, plaintiff's motion for default judgment is construed as made to the court pursuant to
26  Fed. R. Civ. P. 55(b)(2).

1          1.  <u>Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)</u>

2          A federal court is a court of limited jurisdiction, and may adjudicate only those

3   cases authorized by the Constitution and by Congress.  <u>See</u> <u>Kokkonen v. Guardian Life Ins. Co</u>,

4   511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994).  The basic federal jurisdiction statutes, 28

5   U.S.C. §§ 1331 and 1332, confer "federal question" and "diversity" jurisdiction, respectively,

6   while statutes regulating specific subject matter may also confer federal jurisdiction.  <u>See</u>

7   <u>generally</u>, W.W. Schwarzer, A.W. Tashima & J. Wagstaffe, <u>Federal Civil Procedure Before Trial</u>

8   § 2:5.  Lack of subject matter jurisdiction is so fundamental that it may be raised at any time by

9   any party or by the court.  <u>See</u> <u>Attorneys Trust v. Videotape Computer Products, Inc.</u>, 93 F.3d

10  593, 594-95 (9th Cir. 1996).

11          "When subject matter jurisdiction is challenged under Federal Rule of Procedure

12  12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion.  A

13  plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the

14  existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on

15  having the defect called to its attention or on discovering the same, must dismiss the case, unless

16  the defect be corrected by amendment."  <u>Tosco Corporation v. Communities for a Better</u>

17  <u>Environment</u>, 236 F.3d 495, 499 (9th Cir. 2001) (citations and internal quotations omitted).

18          Ordinarily, when "matters outside the pleadings are presented to . . . the court, the

19  motion shall be treated as one for summary judgment."  Fed. R. Civ. P. 12(c).  However, when

20  there is a factual question about whether a court has jurisdiction, the trial court may consider

21  affidavits or any other evidence properly before the court.  <u>Sommatino v. United States</u>, 255 F.3d

22  704, 710 (9th Cir. 2001); <u>Am. Med. Colleges v. United States</u>, 217 F.3d 770, 778 (9th Cir. 2000).

23  Thus, unlike the strict limitations under Rule 12(b)(6) against considering matters outside the

24  complaint, a Rule 12(b)(1) motion may refer to evidence extraneous to the complaint without

25  converting it into a Rule 56 motion for summary judgment.  <u>Sun Valley Gas v. Ernst Enters.,</u>

26  <u>Inc.</u>, 711 F.2d 138,139 (9th Cir. 1983).

2. <u>James Tudor</u>

While this issue is mooted by the court's recommendation that the complaint be dismissed in its entirety, James Tudor should be dismissed from this action. He is no longer employed by defendant SCIF and plaintiff does not allege he was responsible for the challenged conduct other than as SCIF's presiding officer. Moreover, since plaintiff's complaint is premised on this court's jurisdiction pursuant to 42 U.S.C. § 1983 (discussed infra), naming SCIF's presiding officer in his official capacity is indistinguishable from naming SCIF itself. <u>See</u> <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658, 691, n. 55, 98 S.Ct. 2018, 2036 (1978) ("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent – at least where Eleventh Amendment considerations do not control analysis. . ."). <u>See</u> <u>also</u>, Cal. Insur. Code § 11772 ("There shall not be any liability in a private capacity on the part of . . . any officer or employee of the fund for or on account of any act performed or obligation entered into in an official capacity, when done in good faith, without intent to defraud and in connection with the administration, management or conduct of the fund or affairs relating thereto").

3. <u>The Complaint</u>

Additional facts need be presented, and are drawn from the September 5, 2007 decision in this matter by the California Department of Insurance, Administrative Hearing Bureau ("CDI Decision" (<u>see</u> n. 1, supra)). Plaintiff challenged SCIF's 2005 payroll audit of her policy, which assessed an additional premium of $190,035.35. Plaintiff alleged that SCIF misapplied the premium payments she had already made, improperly calculated the amount outstanding, and was tardy in filing required statistical reports with the Workers Compensation Insurance Rating Board ("WCIRB"), resulting in the Board's belated issuance of "experience modification factors" ("ex mods")[6] which increased plaintiff's premiums but were issued too late

---

[6] CDI defined "ex mods" in pertinent part (CDI Decision, at p. 2, fn. 1):

1    to be passed along to plaintiff's customers.

2           According to defendant, the parties' disputes were initially submitted to the

3    SCIF's Customer Assistance Program (CAP), which upheld the Fund's audit.  It is plaintiff's

4    contention that she sought a hearing from SCIF, but the request was denied and the Fund

5    rendered its decision without a hearing.  Plaintiff appealed SCIF's decision to the California

6    Department of Insurance (CDI), and "also appealed [SCIF's] late publication and application of

7    the experience modifications . . . reported to the Workers' Compensation Insurance Rating

8    Bureau."  Defendant's Memorandum in Support of Motion to Dismiss, at p. 2.

9           On September 5, 2007, CDI's Administrative Hearing Bureau issued a "Summary

10    Denial on Appeal" pursuant to California Insurance Code § 11737(f),[7] as reiterated in California

11    Code of Regulations, Title 10, section 2509.53(e)[8], and a written opinion explaining that CDI

12    was *without jurisdiction* to decide the parties' dispute.  Noting that its jurisdiction was limited to

13    disputes concerning "the *manner* in which the rating system has been applied in connection with

14    the insurance afforded or offered," citing Cal. Ins. Code § 11737(f),[9] the Department found that

---

An experience modification ("ex mod") is expressed as a percentage and compares the loss of claims history of one company to all other companies in the same industry or classification. . . . The WCIRB must promulgate ex mods for each qualified employer based on loss and payroll reports filed by insurers pursuant to the California Uniform Statistical Reporting Plan.  Insurers apply the employer's ex mod to the final premium amount due on a policy."

[7]   Cal. Insur. Code § 11737(f) provides in pertinent part:  ". . . If the commissioner has information on the subject from which the appeal is taken and believes that a reasonable basis for the appeal does not exist . . . or that the appeal is not made in good faith, the commissioner may deny the appeal without a hearing.  The denial shall be in writing, set forth the basis for the denial, and be served on all parties."

[8]   Cal. Code of Reg., tit. 10, § 2509.53(e) provides in full: "The Commissioner may deny an appeal without a hearing if he or she has information on the subject from which the appeal is taken and he or she believes that a reasonable basis for the appeal does not exist . . . . The denial shall be in writing and shall set forth the basis for the denial and shall be served on all parties."

[9]   Cal. Insur. Code § 11737(f) provides in pertinent part: "Every insurer or rating organization shall provide within this state reasonable means whereby any person aggrieved by the application of its filings may be heard by the insurer or rating organization on written request to review the manner in which the rating system has been applied in connection with the

the disputes at issue were instead *private contractual matters*.  CDI explained (CDI Decision, at pp. 3-4):

> Appellant [plaintiff herein] does not claim SCIF has incorrectly applied its own rating system or that it is violating a system the Commissioner has approved – rather it claims that SCIF has misapplied premiums Appellant remitted.  The claim is for an accounting and for damage resulting from SCIF's alleged failure to honor its commitment to apply premium payments correctly under its policy contract.  Similarly, an additional claim may be for damages resulting from SCIF's late reporting statistical data to the WCIRB, preventing Appellant from immediately passing along the additional costs resulting from increased ex mods.
>
> Appellant has not, however, claimed the ex mods issued by the WCIRB were erroneous or in violation of any rules or regulations governing WCIRB's conduct.  The only claim is that WCIRB did not issue the ex mods as early as Appellant would have preferred.  WCIRB blames SCIF for this problem because of late data reporting.  SCIF, in turn, pushes it back to Appellant for failure to co-operate and provide necessary audit data and access.  Thus, the dispute relates ultimately to SCIF's allegedly misapplying premium payments and to its alleged tardiness in reporting data to WCIRB.  In each instance the asserted wrong is a breach of the obligation owed by SCIF to Appellant under its insurance policies, or a breach of the covenant of good faith and fair dealing implicit in the contract.  These are the types of private disputes between an insured employer and its workers' compensation insurer over which the Commissioner does not have jurisdiction . . .

Thus, CDI found the parties' disputes to be private, actionable in contract or tort, and without an administrative remedy, similar to the claims addressed in Tricor California, Inc. v. State Compensation Ins. Fund, 30 Cal. App. 4th 230 (1994) (authorized private causes of action for an accounting, fraud, breach of contract, and breach of the implied covenant of good faith and fair dealing, the latter based on allegations that SCIF failed adequately to investigate and pay claims, set premium rates and permit the review and audit of its files); Security Officers Service, Inc. v. State Compensation Ins. Fund, 17 Cal. App. 4th 887 (1993) (authorized private cause of action for breach of the implied covenant of good faith and fair dealing, and for negligence, based on allegations that SCIF delayed claims processing and overestimated reserves, thus adversely impacting plaintiff's premiums and dividends); and Lance Camper Manufacturing

---

insurance afforded or offered. . . Any party affected by the action of the insurer or rating organization on the request may appeal . . .to the commissioner who, after a hearing held within 60 days from the date on which the party requests the appeal . . . , may affirm, modify, or reverse that action. . . ."

1   Corp. v. Republic Indemnity Co., 44 Cal. App.4th 194 (1996) (authorizing private causes of

2   action for breach of contract and bad faith based on challenges to private insurer's claims

3   handling practices that allegedly adversely impacted plaintiff's premiums, reserves, losses and

4   dividends).  Relying on these cases, CDI concluded, "As in Lance Camper, this appeal present[s]

5   private claims by an insured employer for breach of contract or tortious misconduct against its

6   insurer, for which the Legislature has not created an administrative remedy within the

7   Commissioner's jurisdiction."  CDI Decision, at p. 6.

8          CDI's decision informed the parties they could seek judicial review pursuant to

9   California Code of Regulations, title 10, § 2509.76.[10]  However, the record does not indicate any

10  request for state judicial review or the pendency of any parallel state court proceeding.

11         Plaintiff's "substantive due process" challenge is based upon the following:  (1)

12  SCIF's presentation of a final bill for the calendar year 2005 without providing notice to plaintiff

13  that she could dispute the bill pursuant to "a hearing . . .  or appeals process or dispute resolution

14  process of any kind as mandated by the statutes governing [SCIF's] operations;" (Count 1); (2)

15  SCIF's denial of a hearing (Count 2); (3) the Insurance Commissioner's dismissal of plaintiff's

16  appeal for lack of jurisdiction without addressing SCIF's denial of hearing and without reviewing

17  the details of the challenged audit (Count 3); and (4) SCIF's "enforcement of a fictitious debt,"

18  demonstrated by its notice to plaintiff that failure timely to pay the disputed premium would

19

20         [10]  California Code of Regulations, Tit. 10, § 2509.76, provides for judicial review
    pursuant to a petition for writ of mandate in accordance with the provisions of section 1094.5 of
21  the California Code of Civil Procedure.  See also, Cal. Ins. Code § 11754.5 ("Any finding,
    determination, rule, ruling, or order made by the commissioner under this article or Article 2
22  (commencing with Section 11730) shall be subject to review by the courts of the state pursuant to
    Section 1094.5 of the Code of Civil Procedure").  The petition must be filed "within ninety (90)
23  days after the last day on which reconsideration can be ordered."  10 Cal. Code Reg. § 2509.76
    (a).  "The power to order a reconsideration shall expire 30 days after service of a decision on the
24  parties . . ." 10 Cal. Code Reg. § 2509.72.  Service includes sending a decision by first-class
    mail.  10 Cal. Code Reg. § 2509.42 (q).  (The Commissioner may, but need not, convene a
25  hearing on a petition for reconsideration.  10 Cal. Code Reg. § 2509.75.)  Thus, here, assuming
    CDI's decision was served on the date it was issued (September 5, 2007), the parties had a total
26  of 120 days (or until January 3, 2008) to seek judicial review pursuant to filing a petition for writ
    of mandate in state court.

1   result in the cancellation of plaintiff's insurance (Count 4).  Plaintiff also claims that SCIF's

2   "enforcement of a fictitious debt" imposes upon her involuntary servitude in violation of the

3   Thirteenth Amendment.  Complaint, at pp. 2-3.

4           This court has carefully considered plaintiff's claims, and the contentions of

5   defendant in support of its motion to dismiss.  For the following reasons, the court concludes that

6   plaintiff's "complaint states no facts which involve a federal right," Dinneen v. Williams, 219

7   F.2d 428, 429 (9th Cir. 1955), and should therefore be dismissed for want of jurisdiction, Bell v.

8   Hood, 327 U.S. 678, 683, 66 S.Ct. 773 (1946).

9           Plaintiff premises this court's jurisdiction in this nondiversity case on federal

10   subject matter (28 U.S.C. § 1331), based on her contentions she has been denied "substantive due

11   process" (Fourteenth Amendment) and subjected to involuntary servitude (Thirteenth

12   Amendment).  These constitutional challenges are implicitly and necessarily made pursuant to 42

13   U.S.C. § 1983.  "Section 1983 does not create any substantive rights, but is instead a vehicle by

14   which plaintiffs can bring federal constitutional and statutory challenges to actions by state and

15   local officials."  Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).  To succeed on a §

16   1983 claim, a plaintiff must demonstrate a deprivation of a right secured by the Constitution or

17   laws of the United States, and that the defendant acted under color of state law.[11]  West v. Atkins,

18

19   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

         [11]  Due to the court's finding that plaintiff has failed to establish federal subject matter
     jurisdiction, the court need not consider whether the conduct of SCIF meets the "under color of
20   state law" requirement of § 1983, nor whether SCIF is a "state agency" or "arm of the state"
     protected by Eleventh Amendment immunity.  The United States Bankruptcy Court for the
21   Northern District of California has persuasively reasoned that SCIF is not protected by Eleventh
     Amendment immunity.  See In re ATG, Inc., 311 B.R. 810 (N.D. Cal. 2004), applying the Ninth
22   Circuit's five-part test for assessing whether an entity is an "arm of the State" set forth in
     Mitchell v. Los Angeles Community College District, 861 F.2d 198 (9th Cir.1988), cert. denied,
23   490 U.S. 1081, 109 S.Ct. 2102 (1989). The ATG concluded that SCIF meets each of the Mitchell
     factors:  it must satisfy judgments against it with surplus revenue generated by insurance
24   premiums, not from the state treasury; it does not perform a centralized government function; it
     is subject to suit in tort and contract, and for noninsurance-related causes of action; it is
25   statutorily authorized to enter into contracts related to its business operations, and to own real
     property and make investments which are taxed as if it were a private insurer; and SCIF is
26   statutorily treated as a private enterprise.  Accord, Simon v. State Compensation Ins. Authority,
     946 P.2d 1298 (1997), cert. denied, 523 U.S. 1124, 118 S. Ct. 1808 (1998) (Colorado Supreme

1  487 U.S. 42, 48, 108 S. Ct. 2250 (1988).

2  Plaintiff's first and second claims, and part of her third claim, are based on SCIF's

3  failure to afford plaintiff a hearing.  However, state law requires only that workers compensation

4  insurers, including SCIF, provide written decisions in response to complaints by their insureds.[12]

5  There is no provision for a hearing unless the insured appeals the insurer's decision to the

6  California Department of Insurance ("CDI"), assuming the parties' dispute is within CDI's

7  jurisdiction.  See Cal. Insur. Code § 11737(f), n. 9, supra.

8  Thus, plaintiff's contention she was entitled to a hearing before SCIF is

9  inconsistent with state law and fails to acknowledge that hearings are provided by the

10  Department of Insurance on matters within its jurisdiction.  As discussed below, given the

11  alternative of a private right of action on matters outside CDI's jurisdiction, plaintiff's due

12  process contention before this court is no more than a smokescreen.

13  "[T]he Due Process Clause of the Fourteenth Amendment confers both procedural

14  and substantive rights."  Armendariz v. Penman, 75 F.3d 1311, 1318 (en banc) (9th Cir. 1996).

15  While still theoretically viable, substantive due process is a disfavored analysis and has been

16

17  Court applied three-part analysis to conclude that the Colorado State Compensation Insurance Authority is not a state agency); but see, Austin v. State Indus. Ins. System, 939 F.2d 676 (9th

18  Cir. 1991) (Ninth Circuit, applying Mitchell and placing significant weight on a decision of the Nevada Supreme Court, concluded that the Nevada State Industrial Insurance System remains a

19  state agency entitled to Eleventh Amendment immunity).

20  [12]  The procedure is as follows:  Every worker's compensation insurer, including SCIF, is required to designate an office for receipt of "Complaints and Requests for Action."  Cal. Code

21  Reg., tit. 10, § 2509.43(a).  Within thirty days of service of a Complaint and Request for Action, the insurer shall serve the applicant with a written acknowledgment of receipt and "a notice

22  either granting or denying review."  Id., § 2509.44(a).  Within sixty days thereafter the insurer "*shall serve the applicant with a written decision* upon the Complaint and Request for Action"

23  which shall "contain a recitation of the pertinent facts and a determination of the issues presented . . . . [and] shall include a specific statement of the basis for the action taken."  Id., § 2509.45(a)

24  (emphasis added).  The employer may request reconsideration, in response to which the insurer "*shall serve a decision* on reconsideration within thirty days of service of the request. . . ."  Id., §

25  2509.45(b) (emphasis added).  Thereafter, the employer may pursue an appeal before the Insurance Commissioner, *who shall convene a hearing unless* he or she determines that "a

26  reasonable basis for the appeal does not exist or that the appeal is not made in good faith."  Cal. Ins. Code § 11737(f); 10 Cal.Code Reg. § 2509.53(e) (emphasis added).

largely discredited in matters of economics and property rights.  Id.at 1318-1319.[13]  When

available in the context of economic regulation, a substantive due process claim is generally

premised on an allegedly irrational or arbitrary interference with one's property rights.  Bateson

v. Geisse, 857 F.2d 1300, 1303 (9th Cir. 1988).  "'A property interest in a benefit protected by the

due process clause results from a 'legitimate claim of entitlement' created and defined by an

independent source, such as a state or federal law.'"  Bateson, 857 F.2d at 1305, quoting Parks v.

Watson, 716 F.2d 646, 656 (9th Cir.1983).  "Although the underlying substantive interest is

created by 'an independent source such as state law,' federal constitutional law determines

whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due

Process Clause."[14]  Memphis Light, Gas and Water Division v. Craft, 436 U.S. 1, 2, 98 S.Ct.

1554, 1560 (1978) (citations omitted).

Construed most favorably, the "underlying substantive interest" or "property

interest" which plaintiff seeks to protect is her statutorily-created right to a fairly and uniformly

assessed workers compensation insurance rate and premium.[15]  However, "an employer's

---

[13]  The Ninth Circuit has retreated somewhat from this holding in land use regulation cases.  Action Apt. Assoc. v. Santa Monica Rent Control Brd., 509 F.3d 1020, 1024 (9th Cir. 2007) citing Lingle v. Chevron U.S.A. Inc., 544 U. S. 528 (2005).

[14]  The state action requirement of the Fourteenth Amendment is narrower in scope than that required under § 1983.  "If a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, the conduct also constitutes action 'under color of state law' for § 1983 purposes." Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n., 531 U.S. 288, 295, n. 2, 121 S.Ct. 924 (2001).  However, the converse is not true.  "[A]lthough we hold that conduct satisfying the state-action requirement of the Fourteenth Amendment satisfies the statutory requirement of action under color of state law, it does not follow from that that all conduct that satisfies the under-color-of-state-law requirement would satisfy the Fourteenth Amendment requirement of state action." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 935, n. 18, 102 S.Ct. 2744, 2752 (1982).

[15]  The U.S. District Court for the Northern District of California has described the system pursuant to which California workers compensation insurers are to establish their rates (Dinwiddie Construction, 745 F. Supp. at 592):

The California Constitution vests in the Legislature "plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workers' compensation ...". Cal. Const. Art. 14, § 4.  Among the express

1    workers' compensation insurance premium does not implicate a fundamental right akin to basic

2    human economic needs. . . . To the extent that economic regulations may implicate fundamental

3    rights, the substantive limits on a state's power of economic regulation are found where the state

4    requires a business to engage in activities which result in economic waste and are merely

5    incidental to the state's interest in regulation."  Dinwiddie Construction Company v. Dept. of

6    Insurance, State of Calif., 745 F. Supp. 589, 594 (N.D. Cal. 1990), citing Burlington Northern R.

7    Co. v. Dept. of Public Serv., 763 F.2d 1106, 1112  (9th Cir. 1985).[16]

8              In Dinwiddie Construction, 745 F. Supp. at 595, the District Court rejected

9    plaintiff contractor's constitutional challenges to a statutory rule (since superseded) that

10   eliminated consideration of an employer's past experience in setting workers compensation

11   insurance rates.  The court rejected plaintiff's substantive due process contention for failure to

12   present any evidence that application of the rule threatened plaintiff's business.  Similarly,

13   plaintiff here makes only a generalized contention that defendant's additional charge creates a

14   _____

15              legislative powers of creating and enforcing this system are "full provision for
            regulating such insurance coverage in all its aspects, including the establishment
16          and management of a State compensation insurance fund ... and full provision for
            vesting power, authority and jurisdiction in an administrative body with all the
17          requisite governmental functions ...".  Id.

18          Under this plenary power, the legislature has provided that the Commissioner of
            Insurance may classify risks and set rates using a "merit rating system," Cal. Ins.
19          Code § 11732, in which "experience of the particular insured is used as a factor in
            raising or lowering his rate." Id. § 11730.  If such a system is used, it must be
20          uniformly applied to all insurers.  Id. § 11732.  Pursuant to this authority, the
            Insurance Commissioner promulgated the California Experience Rating Plan
21          ("CERP"), which is codified at Cal. Code Regs., Title 10, § 2353.

22          CERP is implemented by a rating organization, as defined and licensed under Ins.
            Code §§ 11750-11759 . . . named . . .The Workers' Compensation Insurance
23          Rating Bureau . . . .

24          [16]  "The standard for judging the constitutionality of a statute . . . which regulates
            economic activity, is the same under the due process, equal protection or commerce clauses.
25          Legislation will be upheld if it bears a rational relationship to a legitimate state interest."
            Burlington Northern, 763 F.2d at 1109, citing Williamson v. Lee Optical Co., 348 U.S. 483, 488,
26          75 S.Ct. 461, 464 (1955) (due process).

1    (predictable) "financial loss."  Complaint, at p. 4.  It is not plaintiff's contention that the state has

2    arbitrarily or irrationally impaired her right to a fairly assessed premium.  As concluded by CDI –

3    and uncontested here – plaintiff makes no claim that SCIF violated the Commissioner's rating

4    system, or incorrectly applied its own rating system, or that the ex mods issued by WCIRB were

5    erroneous or violated any rules or regulations.  Plaintiff challenges neither the law underlying the

6    state's insurance industry rating system, nor its application to her.  Rather, it is plaintiff's claim

7    that an additional premium was imposed upon her without benefit of a hearing, a claim

8    grounded, if at all, in procedural, not substantive, due process.

9         "In a procedural due process claim, it is not the deprivation of property or liberty

10   that is unconstitutional; it is the deprivation of property or liberty without due process of law –

11   without adequate procedures." [17] Daniels v. Williams, 474 U.S. 327, 339, 106 S.Ct. 677, 678

12   (1986).  "'[T]he root requirement' of the Due Process Clause [is] 'that an individual be given an

13   opportunity for a hearing *before* he is deprived of any significant protected interest." [18]

14   Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493 (1985),

15   quoting Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 786 (1971) (original emphasis).

16        Plaintiff has not yet paid the disputed premium (Defendant's Motion to Dismiss,

17   at 3:3-4), and so continues to challenge "pre-deprivation" procedures.  However, in addition to

18

19   [17] "Due process, as this Court often has said, is a flexible concept that varies with the
20   particular situation. To determine what procedural protections the Constitution requires in a
     particular case, we weigh several factors:  'First, the private interest that will be affected by the
21   official action; second, the risk of an erroneous deprivation of such interest through the
     procedures used, and the probable value, if any, of additional or substitute procedural safeguards;
22   and finally, the Government's interest, including the function involved and the fiscal and
     administrative burdens that the additional or substitute procedural requirement would entail.'
23   Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)." Zinermon v.
     Burch, 494 U.S. 113, 127, 110 S.Ct. 975, 984 (1990).

24   [18] Moreover, "[i]n the context of certain deprivations of property, due process is afforded
25   – and therefore the Constitution is not violated – if an adequate postdeprivation state remedy is
     available in practice to provide either the property's prompt return or an equivalent
26   compensation."  Albright v. Oliver, 510 U.S. 266, 315, 114 S.Ct. 807, 834 (1994) (citation
     omitted) (Justice Stevens, with Justice Blackmun, dissenting).

1   the notice and administrative procedures already accorded her, plaintiff was informed that

2   additional state court procedures remained available, both to challenge CDI's jurisdictional

3   decision and to pursue private contract and tort claims against SCIF.  It is instructive that the

4   District Court in Dinwiddie Construction, 745 F. Supp. at 595, found that plaintiff "was not

5   entitled to a hearing on any basis other than the Department's own procedure," because he had

6   demonstrated no greater property interest than a uniform application of the state's rating system.

7   Similarly, here, the availability to plaintiff of further "pre-deprivation" procedures that are

8   entirely dependent upon state law renders plaintiff's federal due process contention – insofar as it

9   challenges SCIF's failure to provide a hearing and CDI's failure to order one – "plainly

10  unsubstantial," Hannis Distilling Co. v. City of Baltimore, 216 U.S. 285, 288, 30 S. Ct. 326

11  (1910), and insufficient to sustain this court's subject matter jurisdiction, id. at 294-295; Bell v.

12  Hood, 327 U.S. at 683.

13          The remainder of plaintiff's third claim challenges the Insurance Commissioner's

14  dismissal of plaintiff's appeal without reviewing the details of the challenged audit.  The

15  Commissioner and California Department of Insurance are not named defendants in this action,

16  appropriately so because they are protected from suit in federal court by the Eleventh

17  Amendment.[19]  Moreover, as plaintiff was informed, CDI's decision is directly reviewable in

18  state court and plaintiff may seek state judicial review of SCIF's audit.  Accordingly, this court

19  finds that plaintiff's third claim fails to present a federal due process challenge or any other

20

21          [19]  "The Eleventh Amendment bars suits against the State or its agencies for all types of
    relief, absent unequivocal consent by the state."  Romano v. Bible, 169 F.3d 1182, 1185 (9th
22  Cir.1999) (citing Pennhurst v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900 (1984)); see also
    Durning v. Citibank, N.A., 950 F.2d 1419, 1422-23 (9th Cir. 1991) (Eleventh Amendment bars
23  suits seeking relief against a state, an "arm of the state," or its agencies). "'States or
    governmental entities that are considered "arms of the State" for Eleventh Amendment purposes'
24  are not 'persons' under § 1983."  Doe v. Lawrence Livermore Nat. Laboratory, 131 F.3d 836,
    839 (9th Cir. 1997), quoting Will v. Michigan Dept. of State Police, 491 U.S. 58, 70, 109 S.Ct.
25  2304, 2311 (1989).  "[A] state instrumentality for Eleventh Amendment purposes . . . is not
    subject to a suit for damages under § 1983."  Thompson v. City of Los Angeles,  885 F.2d 1439,
26  1442 (9th Cir. 1989).  Cf., n. 11, supra.

1    federal issue, and therefore fails to establish this court's federal subject matter jurisdiction.

2           Plaintiff's fourth due process claim challenges SCIF's "enforcement of a fictitious

3    debt" pursuant to its demand for payment under threat of cancelling plaintiff's insurance.  This

4    challenge is elsewhere characterized by plaintiff as imposition of involuntary servitude in

5    violation of the Thirteenth Amendment.  Both characterizations are frivolous, the due process

6    allegations for the reasons previously stated.  Absent a state court determination overturning

7    CDI's jurisdictional finding or assessing differently the parties' respective contractual rights and

8    obligations, it is within SCIF's discretion to enforce its audit.  Plaintiff's challenge to such

9    enforcement based on a claim of involuntary servitude is supercilious.  "[T]he term 'involuntary

10   servitude' necessarily means a condition of servitude in which the victim is forced to work for

11   the defendant by the use or threat . . . of coercion through law or the legal process." United States

12   v. Kozminski, 487 U.S. 931, 952, 108 S. Ct. 2751, 2765 (1988); see also, United States v.

13   Mussry, 726 F.2d 1448, 1453 (9th Cir.), cert. denied, 469 U.S. 855, 105 S.Ct. 180 (1984)

14   (violation of the thirteenth amendment "occurs when an individual coerces another into his

15   service by improper or wrongful conduct that is intended to cause, and does cause, the other

16   person to believe that he or she has no alternative but to perform the labor").  In stark contrast,

17   requiring payment of premiums as a condition for continued insurance coverage is an accepted

18   business practice, and plaintiff is free to obtain insurance from a more competitive provider.

19   Thus, plaintiff's fourth and final claim fails to establish this court's jurisdiction.

20          The Supreme Court has recognized that "a suit may sometimes be dismissed for

21   want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly

22   appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such

23   a claim is wholly insubstantial and frivolous."  Bell v. Hood, 327 U.S. at 682-683.  Although the

24   Bell Court found that the case before it presented prima facie meritorious issues warranting

25   federal adjudication, it established the standard for distinguishing between cases that do, and do

26   not, create federal subject matter jurisdiction.  See, Bell v. Hood, 327 U.S. at 685 ("the right of

17

1   the petitioners to recover under their complaint will be sustained if the Constitution and laws of

2   the United States are given one construction and will be defeated if they are given another"); cf.,

3   Franklin v. State of Oregon, 662 F.2d 1337, 1342 (9th Cir. 1981) ("'the federal courts are without

4   power to entertain claims otherwise within their jurisdiction if they are "'so attenuated and

5   unsubstantial as to be absolutely devoid of merit,'" "'wholly insubstantial,'" "'obviously

6   frivolous,'" "'plainly unsubstantial,'" or "'no longer open to discussion'") (quoting Hagans v.

7   Lavine, 415 U.S. 528, 536-37, 94 S.Ct. 1372 (1974) (citations omitted)); Dinneen v. Williams,

8   219 F. 2d at 429 ("The complaint states no facts which involve a federal right.  It is therefore

9   obvious that there is not here a defective statement of a violation of a federal right."); accord,

10  Wheeldin v. Wheeler, 373 U.S. 647, 650, 83 S. Ct. 1441(1963) ("the facts alleged do not

11  establish a violation of the Fourth Amendment [a]nd the provisions of the Civil Rights Act are

12  clearly inapplicable").

13          Accordingly, this court finds that plaintiff has failed to establish this court's

14  federal subject matter jurisdiction and recommends that this case be dismissed pursuant to Fed.

15  R. Civ. P. 12(b)(1), without leave to amend.  However, plaintiff is hereby informed that

16  "[d]ismissal for lack of jurisdiction . . . does not operate as a judgment on the merits, and thus

17  allows a plaintiff the opportunity to seek relief in the state courts or to assert a claim for which

18  the federal courts have jurisdiction."  Franklin v. State of Oregon, 662 F.2d at 1343.

19  CONCLUSION

20          For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

21          (1)  Defendant's motion to set aside entry of default (Doc. #11) be granted;

22          (2) Plaintiff's motion for default judgment (Docs. #10 and #21) be denied;

23          (3) Defendant's motion to dismiss the complaint (Doc. #18) be granted;

24          (4) Defendant James Tudor be dismissed from this action;

25          (5) This action be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), without leave to

26  amend; and

1    (6) Judgment be entered for defendants State Compensation Insurance Fund and

2  James Tudor.

3    These findings and recommendations are submitted to the District Judge assigned

4  to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being

5  served with these findings and recommendations, plaintiff may file written objections with the

6  court.  The document should be captioned "Objections to Magistrate Judge's Findings and

7  Recommendations."  Plaintiff is advised that failure to file objections within the specified time

8  may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th

9  Cir. 1991).

10  DATED: 07/29/08                                    /s/ Gregory G. Hollows

11                                              _____
                                               GREGORY G. HOLLOWS
12                                              U. S. MAGISTRATE JUDGE

13  GGH5:Randell2760.f&r.fin

14

15

16

17

18

19

20

21

22

23

24

25

26